UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DENNIS J. CARECCIA,

                Plaintiff,

-against-

ARTHUR MACRAE, JR., and ARTHUR D. MACRAE,

                Defendants.
------------------------------------------------------------X

05-CV-1628 (ARR)

NOT FOR ELECTRONIC
OR PRINT
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Plaintiff Dennis J. Careccia filed the instant action on March 30, 2005, invoking the court's diversity jurisdiction in order to pierce the corporate veil of A.D. Mac Consulting Corp., Inc. ("A.D. Mac"). Following a bench trial before Magistrate Judge Roanne L. Mann in the underlying action for breach of contract on September 28-29, 2004, plaintiff won a judgment of $318,850.77 plus interest against A.D. Mac. The judgment has not been satisfied, and plaintiff commenced the instant action in order to pierce the corporate veil and recover the outstanding judgment from defendants Arthur MacRae, Jr. ("Junior") and Arthur D. MacRae ("Senior"). Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the action is precluded by <u>res judicata</u> and <u>collateral estoppel</u> and that, in any event, plaintiff has failed to adequately plead his claim. For the reasons stated below, defendant Arthur MacRae, Jr.'s motion to dismiss is denied. The court dismisses the complaint against defendant Arthur D. MacRae without prejudice to replead within ten (10) days of the date of this order.

1

## BACKGROUND

For purposes of defendants' motion to dismiss, all of the facts alleged in plaintiff's complaint are assumed to be true.

Plaintiff entered into a two-year employment agreement with A.D. Mac running from April 11, 2002 through April 11, 2004. Complaint ¶ 15. Plaintiff worked for A.D. Mac as Outside Plant Superintendent at the company's office in Long Island City, New York, from April 11, 2002 through October 30, 2002. Id. ¶¶ 12, 9. Plaintiff's employment was terminated on or about October 22, 2002 by Junior, approximately eighteen months prior to the termination of the contract. Id. ¶ 14, 16.

Plaintiff commenced an action for breach of contract in New York state court in February of 2003. On March 28, 2003, defendant removed that suit to federal court. Following a bench trial before Magistrate Judge Roanne L. Mann on September 28-29, 2004, plaintiff was awarded a judgment in the amount of $318,850.77 plus interest. A.D. Mac has paid plaintiff no portion of that judgment.

Junior and Senior are the sole shareholders of A.D. Mac, which is insolvent. Complaint ¶ 10, 22. At the time plaintiff's employment was terminated, A.D. Mac was a grossly undercapitalized corporation. Id. ¶ 23. Defendants failed to observe corporate formalities with respect to the operation of A.D. Mac, such as failing to conduct shareholder meetings or to maintain corporate records. Id. ¶ 24. Junior exercised complete domination over A.D. Mac's operations, using the corporation's assets for his own and other officers' personal purposes. Id. ¶¶ 26-27. Junior directed A.D. Mac employees to work on his personal residence with supplies

purchased by the company. Id. ¶ 28. A.D. Mac assets were used to purchase a boat and other items for Junior and the company's other officers. Id. ¶ 29.

Plaintiff alleges that A.D. Mac encountered financial difficulties in 2002 because of the company's undercapitalization and Junior's misuse of corporate funds. Id. ¶ 33. Plaintiff further alleges that, as a result of the company's financial difficulties, A.D. Mac terminated him, thereby breaching the employment contract. Id. ¶ 34.

## DISCUSSION

I. Motion to Dismiss Standard

In deciding a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true material facts alleged by the plaintiff and construe all reasonable inferences in favor of the nonmoving party. Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995). Such a motion cannot be granted simply because recovery appears remote or unlikely on the face of a complaint, as "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotation marks and citation omitted). A complaint should be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Stated differently, the court can dismiss the complaint only if, assuming all facts alleged in the complaint as true, plaintiff has failed to plead the basic requirements necessary to pierce the corporate veil.

Rule 12(b)(6) empowers courts to dismiss a claim if it is barred by res judicata or collateral estoppel. Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) ("Res

judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)."); Sassower v. Abrams, 833 F.Supp. 253, 264n.18 (S.D.N.Y. 1993) ("[I]t is well settled that a court may dismiss a claim on res judicata or collateral estoppel grounds on a Rule 12(b)(6) motion.").

II. Choice of Law

A federal court sitting in diversity ordinarily applies the choice of law rules of the forum state. Krauss v. Manhattan Life Ins. Co., 643 F.2d 98, 100 (2d Cir. 1981). In the instant case, however, the parties have assumed from the outset that New York law governs, as evidenced by reliance on New York law to support their respective contentions. The court will thus apply New York law to the claim at issue here. WM. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 137 (2d Cir. 1991) (citing Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984) (under New York law, "in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied.")).

III. Piercing the Corporate Veil

New York courts adhere to the general rule that "[b]roadly speaking, the courts will disregard the corporate form, or, to use accepted terminology, pierce the corporate veil, whenever necessary to prevent fraud or to achieve equity." Matter of Morris v. New York State Dept. of Taxation & Fin., 82 N.Y.2d 135, 140 (1993) (internal quotation marks and citations omitted). Generally, "piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which

4

resulted in plaintiff's injury." Id. at 141 (citations omitted). "While complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required." Id. at 141-42 (internal citations omitted).

"[A] decision whether to pierce the corporate veil in a given instance will necessarily depend on the attendant facts and equities." Id. at 141. In order to determine whether a corporation is dominated, courts consider a number of factors: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the amount of discretion showed by the allegedly dominated corporation; (7) whether the alleged dominator deals with the corporation at arms length; (8) whether the corporation is treated as an independent profit center; (9) whether others pay or guarantee debts of the dominated corporation; and (10) intermingling of property between the alleged dominator and the corporation. See WM. Passalacqua Builders, Inc., 933 F.2d at 139. "Whether to pierce the corporate veil requires a fact-specific inquiry in which no single factor is decisive." Cordius Trust v. Kummerfeld, No. 99 Civ. 3200 (DLC), 2004 WL 616125, *6 (S.D.N.Y. March 30, 2004).

IV. Res Judicata and Collateral Estoppel

The court must apply New York law in determining the preclusive affect of the judgment of a federal court sitting in diversity. NAS Electronics, Inc. v. Transtech Electronics PTE, Ltd., 262 F.Supp.2d 134, 143 (S.D.N.Y. 2003) ("[W]hen a federal court sitting in

diversity applies state substantive law as the rule of decision in a case, the preclusive effect of any decision by the federal court in that case is to be determined by the state preclusion law of the state in which the district court sits.") (citing Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508-09 (2001)).

A. Res Judicata

New York employs a "transactional approach" to res judicata, or claim preclusion. Thus, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." O'Brien v. City of Syracuse, 54 N.Y.2d 353 (1981). Stated differently, the well known rule is that a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action.

Defendants argue that plaintiff's failure to name them in the underlying suit and to seek to pierce the corporate veil in that action bars them from doing so now. "Our position was that, once a cause of action was 'discernable' from the facts developed in that suit, the Plaintiff was required to bring that cause of action or be barred from doing so in a subsequent case." Defendant's Reply Brief at 8. Defendant points to a September 15, 2004 letter from plaintiff to Magistrate Judge Mann stating that plaintiff would seek to pierce the corporate veil, if at all, in a subsequent proceeding as proof that Plaintiff could have sought to do so in the initial proceeding. Defendant's Ex. C. Defendants argue that the two complaints implicate the same transaction or series of transactions and involve the same parties as the individual defendants are in privity with A.D. Mac. Defendants also argue that there was an adjudication

on the merits. While defendants invoke the res judicata standard and argue that it applies to bar actions like the instant enforcement action, defendants have cited no case for the proposition that veil-piercing is the kind of claim that is subject to preclusion doctrines. The weight of authority suggests that it is not.

As a preliminary matter, the court notes that parties regularly seek to enforce judgments awarded in one proceeding via a corporate veil-piercing theory in a subsequent proceeding. Following the Supreme Court's decision in Peacock v. Thomas, 516 U.S. 349 (1996), the Second Circuit has confirmed that while "claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability" require an independent basis of federal jurisdiction, federal courts have ancillary jurisdiction over post-judgment proceedings to collect a federal court judgment, even where that proceeding involves a claim of fraudulent conveyance. Epperson v. Entertainment Express, Inc., 242 F.3d 100, 106 (2d Cir. 2001). Epperson clearly foresees enforcement proceedings in which plaintiffs assert veil-piercing claims as long as the federal court in which the action is commenced has an independent basis for jurisdiction. Cases from federal and state courts in New York further demonstrate that plaintiffs regularly attempt to pierce the corporate veil in an enforcement proceeding even if it would have been possible to name the defendants as parties to the underlying suit and pursued the claim at that point.

In Eckhaus v. Blauner, Judge Haight considered an action to enforce a previously entered judgment by means of piercing the corporate veil. No. 94 civ. 5635 (CSH), 1997 WL 362166 (S.D.N.Y. June 26, 1997). The court rejected defendants' argument that res judicata precluded plaintiffs from seeking to pierce the corporate veil because plaintiffs could have asserted that

claim in the initial proceeding but did not. Id. at *5. Judge Haight concluded that plaintiff's "initial litigated claim against [corporate defendant], resulting in summary judgment in its favor, gives rise to no res judicata implications with respect to third parties." Id. Noting that res judicata might bar the claim had the plaintiff previously instituted supplementary proceedings to enforce the judgment, the court went on to consider plaintiff's claim that the corporate veil should be pierced. New York state courts have reached the same conclusion.

In RENP Corp. v. EMB Corp., the Appellate Division considered whether to pierce the corporate veil in an enforcement action instituted after plaintiff had been awarded judgment in a previous action. 229 A.D.2d 381 (2d Dep't 1996). Noting that the initial action was for breach of contract and that the enforcement action focused on the individual defendant's self-dealing and undercapitalization, the court held that the differences between the actions in terms of the issues, facts to be proved, relief sought, and law applied rendered res judicata inapplicable. Id. at 382.

In another case where the plaintiffs, who had been awarded a judgment against defendant's subsidiary, sought to pierce the corporate veil in an enforcement action to hold the parent company liable, the Appellate Division held that the trial court had "properly rejected defendant's assertion that the present action is barred by collateral estoppel or res judicata." REBH v. Rotterdam Ventures Inc., 252 A.D.2d 609, 610 (3d Dep't 1998). The defendant in the enforcement action had been named in the initial suit, although the claim against it in that action had been dismissed, and the veil-piercing issue had been briefed, though it had not been pleaded in the complaint. The Appellate Division held that because piercing the corporate veil had not been "actually determined in the prior proceeding, the doctrine of collateral estoppel does not

prevent [its] consideration at this juncture." Id. at 235-36 (internal quotation marks and citations omitted). The court went on to state that "inasmuch as the claims presently before us have their origins in different factual occurrences (the earlier suit involved proof of the circumstances surrounding the execution, performance and breach of the employment contract and lease, whereas this case centers on wholly unrelated transactions between [the subsidiary and the parent]), seek different kinds of relief and require the application of a different body of law, res judicata does not mandate their dismissal." Id. at 236.

In yet another action to enforce a prior judgment where plaintiff sought to pierce the corporate veil, the Appellate Division concluded that res judicata did not bar the action even though the individual defendant had been named in the complaint in the underlying action. First Capital Asset Management, Inc. v. N.A. Partners, L.P., 260 A.D.2d 179 (1st Dep't 1999). The court found that the underlying action had been dismissed with respect to that defendant on the finding that he was not personally liable. Id. at 181. The court concluded that the dismissal in the initial action "did not preclude a subsequent proceeding to enforce the judgment against [individual defendant] based on allegations that would support piercing the corporate veil of the judgement debtors inasmuch as the necessary elements of proof and evidence required to sustain recovery vary materially." Id. (internal quotation marks and citation omitted).

The Appellate Division's decision in Austin Powder Co. v. McCullough, 216 A.D.2d 825 (3d Dep't 1995), on which plaintiff relies and which defendants attempt to distinguish from the above-captioned matter, is consistent with these cases. While defendants contend that Austin Powder indicates that a plaintiff may seek to pierce the corporate veil in a subsequent proceeding

9

only where there is post-judgment discovery or testimony, Defendants' Brief at 12, the case does not stand for that proposition, which finds no support in the case law.

Defendants nonetheless insist that they were in privity with the defendant in the underlying action and that, as a result, res judicata applies to bar the instant action against them. The case on which defendants rely, Sterling Doubleday Enterprises, L.P. v. Marro, 238 A.D.2d 502 (2d Dep't 1997), is inapposite. In the underlying action for breach of contract, a default judgment had been entered against the corporate defendant. The Appellate Division's opinion in the subsequent enforcement action where plaintiff sought to pierce the corporate veil specifically identified only one of the individual defendants' affirmative defenses, unclean hands, but found five of those defenses to be barred by res judicata and collateral estoppel. The most the case can fairly be read to state is that the principals or directors of a company who have control over litigation and allow a default judgment to be entered may not, in a subsequent proceeding to pierce the corporate veil, assert defenses that could have been asserted in the underlying action. The case does nothing to support defendants' position that as principals of A.D. Mac, they were in privity with that defendant in the underlying action and that, as a result, res judicata bars the instant action.

Finally, the court notes that A.D. Mac's failure to satisfy the judgment awarded to plaintiff has caused plaintiff to institute this enforcement action to pierce the corporate veil. The rule suggested by defendants would require plaintiffs to foresee, before resolution of their suits, that a defendant would refuse or be unable to satisfy the judgment and to invest their own and the court's resources in determining whether piercing the veil is appropriate at a point that may be premature. Defendant's Reply Brief at 8 ("Our position was that, once a cause of action was

'discernable' from the facts developed in that suit, the Plaintiff was required to bring that cause of action or be barred from doing so in a subsequent case."). To the extent that res judicata is motivated by concerns for judicial efficiency and economy, it is not clear that those concerns would be promoted by defendant's rule, which would force plaintiffs to join parties and present veil-piercing claims, and courts to adjudicate them, in any case where a plaintiff has an inkling that piercing may be appropriate.

Dismissal is not warranted on the basis of res judicata.

B.  Collateral Estoppel

Defendant next claims that "a finding in Plaintiff's favor on piercing the corporate veil would require the factfinder to radically depart from the facts found by this Court after trial." Defendants' Brief at 14. Defendants' argument suffers from two interrelated defects. First, defendants make this argument without explicitly invoking collateral estoppel, or issue preclusion, which, under New York law, bars a party in a subsequent proceeding from relitigating an issue of fact that was clearly raised in a prior action where the party to be precluded had a full and fair opportunity to litigate the issue and a decision on that issue was necessary to support a final and valid judgment on the merits. PenneCom B.V. v. Merrill Lynch & Co., Inc., 372 F.3d 488, 491 (2d Cir. 2004) (collecting New York cases). Second, assuming arguendo that collateral estoppel applies, defendant has not attempted "to demonstrate that any of the issues of fact necessarily decided in the prior litigation are identical to those issues which are critical to their defense in the present litigation." RENP Corp., 229 A.D.2d at 382-83.

Defendants nonetheless contend that certain fact issues were determined in the underlying action which preclude a finding of corporate dominance in the present case.

11

Defendants state that the court found the following facts in the underlying action: (1) that neither defendant played a role in hiring plaintiff; (2) that Robert Ingles, A.D. Mac's Senior Vice President and Chief Operating Officer, had at least some authority over day-to-day management of the company; and (3) that the court concluded that the employment contract was breached because A.D. Mac's operations were losing money, as a result of its "tremendous debt load" and because it had "exhausted its credit line." Defendants' Brief at 14-15; Defendants' Reply Brief at 11. Defendants emphasize that "[p]laintiff is precluded from asserting that the actual reason for the termination [of the contract] was either undercapitalization in the formation of the company or corporate domination." Defendants' Reply Brief at 11. Stated differently, defendants rely on the court's findings of fact in the underlying action to contend that "[p]laintiff cannot allege the requisite causal nexus without contradicting this court's findings." Id.

Considering the fact-sensitive inquiry courts undertake when analyzing whether it is appropriate to pierce the corporate veil, the court is unable to conclude that plaintiff is collaterally estopped from seeking to do so in this action. Whether Ingles or either defendant actually negotiated plaintiff's contract is not determinative of the propriety of veil piercing. Moreover, Ingles' role in the day-to-day operation of A.D. Mac, even if that were established in the prior litigation, is not identical to the issues that are critical in this case. Finally, the findings in the prior litigation that "[b]y October 2002, [A.D. Mac] was operating under a tremendous debt load and had exhausted its credit line" and that "[w]ith the exception of its New Jersey operation, all of [A.D. Mac's] operations . . . were losing money" is not inconsistent with plaintiff's claim in the present action. Plaintiff alleges in his complaint that

12

A.D. Mac's financial position degenerated in 2002 because of Junior's domination of the company and his misuse of corporate assets.

Defendants have failed to demonstrate that any of the issues of fact necessarily determined in the prior litigation are identical to the issues that are critical in the instant case or necessarily inconsistent with plaintiff's allegations in this case. Dismissal is therefore not warranted on the basis of <u>collateral estoppel</u>.

V.      <u>Sufficiency of the Pleadings</u>

While defendants do not make a distinct argument that plaintiff has failed to plead adequately facts that would support veil-piercing, apart from their invocation of the preclusion doctrines, that claim does appear in their briefs. Defendant's Brief at 14 ("While these allegations are not even sufficient to pierce the veil as to the younger MacRae, the Complaint does not accuse the elder MacRae of doing anything.") (internal citation Omitted). The court finds that plaintiff has adequately pleaded that Junior exercised dominion and control over A.D. Mac and that Junior used that domination to extract assets from the company, leading to the company's financial difficulties that resulted in the termination of plaintiff's employment. The court sees no specific factual allegations in the complaint, however, implicating Senior as having exercised control over the company or committing any fraud or wrong leading to plaintiff's injury. The court will thus dismiss plaintiff's complaint with respect to Arthur D. Macrae, without prejudice to replead within ten (10) days of the date of this order.

## CONCLUSION

For the foregoing reasons, defendant Arthur MacRae, Jr.'s motion to dismiss is denied. The court dismisses the complaint against Arthur D. MacRae without prejudice to replead within ten (10) days of the date of this order.

SO ORDERED.

　　　　　　　　　　　　　　　　　　　Allyne R. Ross
　　　　　　　　　　　　　　　　　　　United States District Judge

Dated: July 15, 2005
　　　　Brooklyn, New York

SERVICE LIST:

Attorney for Plaintiff
James Patrick Clark
Bond, Schoeneck & King P.L.L.C.
1399 Franklin Avenue
Garden City, NY 11530

Attorney for Defendants
Daniel John Carluccio
Carluccio, Leone, Dimon, Doyle & Sacks, L.L.C.
9 Robbins Street
Toms River, NJ 08753

Edward J Dimon
Carluccio, Leone, Dimon, Doyle & Sacks, L.L.C.
9 Robbins Street
Toms River, NY 08753